Betty GRISWOLD, Plaintiff,

v.

ALABAMA DEPARTMENT OF INDUSTRIAL RELATIONS, et al., Defendants.

No. CV–94–A–1374–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 10, 1995.

Elizabeth Joy Hubertz, Pamela L. Sumners, Watterson & Singer, Birmingham, AL, Fern Singer, Sirote & Permutt, Birmingham, AL, for Betty Griswold.

Glenn V. Chaffin, Department of Industrial Relations, State of Alabama, Montgomery, AL, Joel Hartley Pearson, Wesley Romine, Morrow, Romine & Pearson, P.C., Montgomery, AL, for Alabama Dept. of Indus. Relations.

Glenn V. Chaffin, Department of Industrial Relations, State of Alabama, Montgomery, AL, Wesley Romine, Morrow, Romine & Pearson, P.C., Montgomery, AL, for Doug Caudill, John Long, Carolyn Ashley, and Rex A. Granger.

*MEMORANDUM OPINION AND ORDER*

ALBRITTON, District Judge.

## INTRODUCTION

On October 25, 1994, plaintiff Betty Griswold filed a complaint in this court against her former employer, Alabama Department of Industrial Relations, ("ADIR"), and her former supervisors: Doug Caudill, John Long, Carolyn Ashley, and Rex Granger, (collectively referred to as "supervisors"). The complaint contained five counts: Count One sought relief against ADIR and the supervisors, in their official and individual capacities, under 29 U.S.C. § 621 *et seq.*, the Age Discrimination in Employment Act, ("ADEA"). Count Two sought relief against supervisors Long, Caudill, and Ashley under unspecified state laws.[1] Count Three sought relief against ADIR and Granger, in his individual capacity, for conspiracy to obstruct justice under 42 U.S.C. § 1985(2). Count Four sought relief against ADIR and the supervisors, in their individual capacities, for deprivation of Griswold's liberty interest without due process, under 42 U.S.C. § 1983. Finally, Count Five sought relief against ADIR and Granger[2] under 42 U.S.C. § 1986 for failing to remedy the conspiracy to obstruct justice.

On November 16, 1994, each Defendant filed a motion to dismiss and motion to extend time to answer the complaint; a Memorandum of Law in Support of Defendants' Motion to Dismiss jointly supported the Defendants' individual motions. On November 28, 1994, Griswold filed her Motion to Strike all exhibits appended to Defendants' memorandum, arguing against converting Defendants' motions into summary judgment motions. On December 5, 1994, Griswold filed her Amended Complaint, (hereinafter referred to as "complaint").[3] The parties have fully briefed these motions and placed them under submission before this court.

## JURISDICTION

ADIR argues that a state agency is not a "person" as that term is used in § 1983, § 1985(2) and § 1986, and thus this court lacks subject matter jurisdiction to hear these claims against ADIR. (Mem.Supp. Defs.' Mot. Dismiss at 10.) The issue involves statutory construction, more appropriately considered in the context of ADIR's Fed.R.Civ.P. 12(b)(6) motion, not a motion challenging jurisdiction.

The court's jurisdiction arises through 28 U.S.C. § 1331 because Griswold alleges violations of 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 1983, 42 U.S.C. § 1985(2), and 42 U.S.C. § 1986. The court's supplemental jurisdiction over the state law claims arises through 28 U.S.C. § 1367. Therefore, the court will deny Defendants' motion to dismiss for lack of subject matter jurisdiction.

## MOTION TO STRIKE

Griswold moves to strike the exhibits attached to Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, arguing against converting Defendants' motion into a summary judgment motion. The court will not convert Defendants' motion to dismiss into one for summary judgment. Because the court must accept the complaint's allegations as true for purposes of a Fed. R.Civ.P. 12(b)(6) motion, the court will GRANT Griswold's motion to strike.

1. The complaint fails to specify the capacity in which the supervisors are sued as to state law claims. Because the Eleventh Amendment bars official capacity suits against these supervisors in this court, except for suits seeking prospective injunctive relief, the court construes this count to be against the named supervisors in their individual capacities only. Also, the court construes this to be a state law claim only. Although the theory of recovery under state law is not specified and is unclear, the defendants have not briefed a challenge to the sufficiency of such claim.

2. The complaint does not specify the capacity in which Granger is sued in this count. The court construes this claim to be against Granger in his individual capacity.

3. The Amended Complaint did not add claims or parties. Defendants never responded to the Amended Complaint, but their initial arguments address the Amended Complaint as well as the original complaint; therefore, the court will rule upon Defendants' motions based on the amended complaint.

## STANDARD FOR RULE 12(B)(6) MOTION TO DISMISS

A Fed.R.Civ.P. 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of the motion, the court will accept as true all well-pleaded factual allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Furthermore, a court may dismiss a complaint only if no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232. The court recognizes that a plaintiff must meet only an "exceedingly low" threshold to survive a Rule 12(b)(6) motion. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted).

## FACTS ALLEGED

On June 28, 1993, ADIR hired Griswold, a woman over forty years of age, from the state register of eligible employees for the position of account clerk. (Compl. at ¶ 8.) Griswold's supervisors, wishing to hire a younger applicant instead of Griswold, openly made remarks indicating their resentment of Griswold. (Compl. at ¶ 10.) Because of their age-based animus against Griswold, (Compl. at ¶ 7), supervisors Long, Caudill, and Ashley agreed among themselves to discriminate against Griswold and deprive her of civil rights. (Compl. at ¶¶ 36–39.)

Supervisors falsely lowered Griswold's performance appraisals and shamed and ridiculed her in front of her peers, creating the impression that she was incompetent. (Compl. at ¶¶ 47, 48.) They made her working conditions so intolerable that she was forced to quit rather than face the Defendants' continual abuse and harassment. (Compl. at ¶ 23.) As a result of her constructive discharge, Griswold never received the opportunity to clear her name in a hearing. (Compl. at ¶ 49.)

Following Griswold's departure from ADIR, supervisor Granger circulated a memorandum to ADIR employees requiring them to disclose any communication with Griswold. (Compl. at ¶ 41.) Granger intended the memorandum to mislead, threaten, coerce and intimidate Griswold's former coworkers and to chill their willingness to cooperate in any judicial proceeding. (Compl. at ¶ 45.) Defendants Granger and ADIR, having knowledge of the conspiratorial wrongs committed against Griswold, failed to prevent or remedy these wrongs. (Compl. at ¶¶ 53–55.)

## DISCUSSION

The court will consider each count individually, beginning with the ADEA claims, then continuing to the claims brought under § 1983, § 1985(2) and § 1986. After careful consideration of the arguments presented, the court finds that (1) the complaint's allegations state a claim for constructive discharge in violation of the ADEA; (2) the Eleventh Amendment does not bar this court from hearing these claims; (3) the supervisors cannot be held individually liable for ADEA violations; (4) the ADEA claims against the supervisors in their official capacities constitute a suit against ADIR, already a properly named party to the suit, and thus are redundant; (5) the supervisors cannot be sued under the stated § 1983 claim because of their qualified immunity; (6) ADIR cannot be sued under § 1983 because a state agency is not a "person" within the meaning of that statute; (7) the complaint fails to adequately allege that supervisor Granger acted as part of a conspiracy for purposes of § 1985(2); and (8) the § 1986 claims must be dismissed along with the § 1985(2) claims.

## I. THE ADEA

### A. *Prima Facie ADEA Claim*

■ Defendants assert that Griswold's allegations do not state a claim under the ADEA. The ADEA makes it unlawful for an employer "to discharge ... or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623. Accordingly, an employer acts unlawfully when, because of an employee's age, it manipulates the employee's work environment in an effort to induce seemingly "voluntary" termination of employment. *See, e.g., O'Neal v. R.J.*

*Reynolds Tobacco Co.*, 517 F.Supp. 587 (S.D.Ga.1981). "The general rule is that if the employer deliberately makes an employee's working condition so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." *Buckley v. Hospital Corporation of America, Inc.*, 758 F.2d 1525, 1529 (11th Cir.1985) (quoting *Young v. Southwestern Savings & Loan Association*, 509 F.2d 140, 144 (5th Cir.1975)). Thus, to establish a constructive discharge claim actionable under the ADEA, a plaintiff must show that the employer's actions were impermissibly motivated by the plaintiff's age, and that these actions made the plaintiff's working conditions so intolerable that resignation is deemed involuntary.

■ The complaint makes allegations sufficient to state a claim for constructive discharge in violation of the ADEA. Griswold alleges that her supervisors acted against her because of their age-based animus towards her. Furthermore, the complaint alleges that Griswold's "working conditions were made so intolerable that she was forced to quit rather than continue to subject herself to the abuse and harassment of the defendants." (Compl. at ¶ 23.) The court finds that these allegations sufficiently state a claim for constructive discharge in violation of the ADEA.

### B. *Eleventh Amendment Immunity*

■ Defendants assert that the Eleventh Amendment to the United States Constitution bars Griswold's claims against them in federal court. The Eleventh Circuit has not addressed whether the Eleventh Amendment precludes ADEA claims against the states in federal court. A growing number of other circuits hold that the Eleventh Amendment does not bar ADEA claims against the states because Congress enacted the ADEA under section 5 of the Fourteenth Amendment and

included within the ADEA's class of potential defendants, defined in 29 U.S.C. § 630(b)(2), "a State or political subdivision of a State or any agency or instrumentality of a State." *See, e.g., Heiar v. Crawford County, Wis.,* 746 F.2d 1190 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *Ramirez v. Puerto Rico Fire Service,* 715 F.2d 694, 700 (1st Cir.1983); *Hurd v. Pittsburg State University,* 29 F.3d 564 (10th Cir.1994). *See also, Arritt v. Grisell,* 567 F.2d 1267, 1271 (4th Cir.1977) (holding that Congress enacted the ADEA under section 5 of the Fourteenth Amendment).[4]

The parties have not briefed this issue and Defendants cite no authority contrary to that cited above. The court chooses to follow these other circuits and hold that the Eleventh Amendment does not bar Griswold's ADEA claims.

### C. *Individual Liability Under the ADEA*

Griswold's complaint states that supervisors Granger, Long, Ashley and Caudill are each sued "as a supervising employee pursuant to the [ADEA]." (Compl. at ¶¶ 3–6.) These supervisors contend that they do not fall within ADEA's definition of "employer" and cannot be held individually liable for ADEA violations. Whether Griswold seeks to hold these supervisors liable both individually and officially for the alleged ADEA violations is unclear; therefore, the court will address both issues, beginning with individual liability of employees under the ADEA.

■ Eleventh Circuit law supports the view that employees are not individually liable for ADEA violations. Both the ADEA and its close relative, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, define "employer" to include any agent of the employer. 29 U.S.C. § 630(b); 42 U.S.C. § 2000e(b). Thus, some courts have held that supervisory personnel and other agents of the employer are themselves employers for purposes of liability. *See, e.g.,*

---

**4.** The court refers the parties to *Equal Employment Opportunity Commission v. Elrod,* 674 F.2d 601 (7th Cir.1981) for a cogent analysis concluding that Congress included the states as ADEA defendants pursuant to its power under section 5 of the Fourteenth Amendment. *See also Hurd v. Pittsburg State University,* 821 F.Supp. 1410 (D.Ka.1993) (analyzing the Eleventh Amendment in the context of ADEA claims against state employees.)

*Hamilton v. Rodgers,* 791 F.2d 439, 442–43 (5th Cir.1986) (holding that supervisors are "employers" for Title VII purposes and can be held individually liable), *limited by, Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir. 1990) (holding that supervisors can only be liable under Title VII in their official capacities). The Eleventh Circuit rejected this construction when it refused to hold employees individually liable under Title VII: "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the act." *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). Moreover, in *Smith v. Lomax,* 45 F.3d 402 (11th Cir.1995), the Eleventh Circuit refused to recognize individual capacity claims under either Title VII or the ADEA:

> Read literally, counts two and three seek ... relief against [the defendants] in their individual capacities. They could not, however, be considered [plaintiff's] employer; Fulton County is [plaintiff's] employer. Accordingly, they cannot be held liable under the ADEA or Title VII. *See Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 511 (4th Cir.) ("[T]he ADEA limits civil liability to the employer."), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993) (same), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). We therefore construe counts two and three as applying only to Fulton County.

*Id.* at 403 n. 4. Based on these authorities, this court finds that Griswold cannot hold supervisors Granger, Long, Ashley and Caudill individually liable for violating the ADEA; the court will dismiss such claims against these supervisors.

### D. *Official Capacity Claims under the ADEA*

■ The court must next consider the ADEA claims against the four supervisors in their official capacity. According to the Supreme Court of the United States, an official capacity suit represents only another way of pleading an action against an entity for whom the named officer was acting as agent. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Thus, official capacity suits against employees can be dismissed as redundant where the employer is a properly named defendant in the lawsuit. *Bahadirli v. Domino's Pizza,* 873 F.Supp. 1528, 1534 (M.D.Al.1995). Because ADIR is a properly named defendant under the ADEA, the court will dismiss supervisors Granger, Long, Ashley and Caudill in their official capacities.

## II. DEPRIVATION OF LIBERTY

Griswold claims the supervisors falsely lowered her performance appraisals and shamed and ridiculed her in front of her peers, creating the impression that she was incompetent. Her constructive discharge afforded no opportunity to remove this stigma of incompetence through a name-clearing hearing. Consequently, Griswold sues ADIR and the supervisors in their individual capacities under 42 U.S.C. § 1983 for denial of her liberty interest in employment without appropriate due process. The court agrees with the Defendants that the supervisors have qualified immunity, and ADIR is not a "person" within the meaning of 42 U.S.C. § 1983.

### A. *Qualified Immunity*

■ Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The qualified immunity analysis consists of two separate components: first, the government official must establish that he or she acted within the scope of discretionary authority when

the allegedly wrongful acts occurred, and second, the plaintiff must demonstrate that the official's actions violated clearly established rights. *Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992).

### 1. *Scope of Discretionary Authority*

Griswold contends the supervisors acted outside their discretionary authority and thus cannot assert the defense of qualified immunity. Specifically, Griswold alleges that state law mandated she receive a hearing, no supervisor had the discretionary authority to deny her this hearing, and thus no supervisor should receive qualified immunity. (Opp'n Defs.' Mot.Dismiss at 6 n. 6.) The argument fails because of the Eleventh Circuit's expansive definition of the term "discretionary authority" for qualified immunity purposes.

■ Whether a government official acts within discretionary authority turns not on the ministerial versus discretionary nature of an act, but rather on an evaluation of the official's duties and authority. *See Jordan v. Doe,* 38 F.3d 1559, 1565–66 (11th Cir.1994). In *Jordan,* the Eleventh Circuit reviewed a district court's denial of qualified immunity because defendants had not established the discretionary nature of their actions. The Eleventh Circuit held that "it would be unwise to engage in a case by case determination of Section 1983 immunity based upon the ministerial versus discretionary nature of the particular official act challenged." *Id.* at 1566 (quoting *Coleman v. Frantz,* 754 F.2d 719, 727 (7th Cir.1985)). The court found that "discretionary authority" includes all actions of a government official that (1) "were undertaken pursuant to the performance of his duties," and (2) were "within the scope of his authority." *Id.* (quoting *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988)).

Examples of the standard's application reveal the level of generality used to determine whether a government official acted within discretionary authority. In *Rich,* the Eleventh Circuit asked whether an investigator acts within his job duties and authority when he submits a probable cause affidavit, not when he submits a probable cause affidavit without a reasonable basis, as the plaintiff alleged. 841 F.2d at 1562, 1564. In *Jordan,*

the Eleventh Circuit asked whether federal marshals act within their job duties and authority by transporting detainees between facilities, not by transporting detainees to overcrowded, unsanitary facilities. 38 F.3d at 1564–66. In a case from this district, the court asked whether a police officer acts within his scope of authority and job duties by controlling an arrestee, not beating an arrestee. *Sweatt v. Bailey,* 876 F.Supp. 1571, 1576 (M.D.Ala.1995).

■ According to the standard outlined above, the complaint alleges no actions by the supervisors that would be outside their discretionary authority. The complaint alleges that supervisors altered Griswold's reports, shamed and ridiculed her in front of her peers, and falsely lowered her performance appraisals. The court must ask whether a supervisor who reviews and alters a subordinate's reports, criticizes subordinates, and evaluates subordinate performance through written performance appraisals acts within the scope of a supervisor's authority and duties. The court finds these activities to be inherently supervisory, and any supervisor engaging in these activities acts within the scope of discretionary authority. In light of this finding, the supervisors' entitlement to qualified immunity depends upon whether Griswold's allegations implicate a constitutional right clearly established at the time of the alleged wrongful activities.

### 2. *Clearly Established Right*

■ The Eleventh Circuit reiterated in *Lassiter v. Alabama A & M University, Board of Trustees,* 28 F.3d 1146 (11th Cir. 1994), the stringent standard that must be met before a right becomes clearly enough established to strip a government official of qualified immunity:

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97

L.Ed.2d 523 [cite], [cite] (1987).... For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

*Lassiter,* 28 F.3d at 1149–50 (string citations and quotations omitted). With this standard in mind, the court will examine whether the supervisors' alleged activities deprived Griswold of a right so clearly established that "only a plainly incompetent [supervisor] or one who was knowingly violating the law would have done such a thing." *Id.* at 1149 (citing *Malley v. Briggs,* 475 U.S. 335, 341–43, 106 S.Ct. 1092, 1096–97, 89 L.Ed.2d 271 (1986)).

■ To prove a deprivation of liberty triggering due process rights, a claimant must "establish that his termination was attended by stigmatizing charges which 'might seriously damage his standing and associations in his community' or foreclose 'his freedom to take advantage of other employment opportunities.'" *Sullivan v. School Board of Pinellas County,* 773 F.2d 1182 (11th Cir. 1985) (quoting *Clemons v. Dougherty County, Georgia,* 684 F.2d 1365, 1371 (11th Cir. 1982)). Thus, to overcome the defense of qualified immunity, Griswold must demonstrate the following: At the time the supervisors acted, the law clearly established that labelling Griswold incompetent stigmatized her to such a degree that her standing and associations in the community might be seriously damaged, or her freedom to take advantage of other employment opportunities might be foreclosed. As explained below, the law of this circuit remains unclear regarding the stigmatizing impact of the label "incompetent".

The Eleventh Circuit explicitly refused to decide whether a mere charge of incompetence implicates Fourteenth Amendment liberty interests in *Clemons v. Dougherty County, Georgia,* 684 F.2d 1365 (11th Cir. 1982). In *Clemons,* the Eleventh Circuit reviewed a district court's ruling that charges attending the plaintiff's discharge were not sufficiently stigmatizing to require a hearing.

*Id.* at 1371. The Eleventh Circuit recognized that the Court of Appeals for the Ninth Circuit distinguishes between a stigma of moral turpitude, which infringes the liberty interest, and a charge of incompetence or inability to get along with coworkers, which does not. *Id.* at 1372. Because the Eleventh Circuit found the employer's charges sufficiently stigmatizing to meet even the Ninth Circuit's test, the court refused "to decide whether to join the Ninth Circuit in holding that a mere charge of incompetence or inability to get along with one's co-workers in connection with a discharge from employment does not infringe fourteenth amendment liberty interests." *Id.* at 1373. Although the Eleventh Circuit later decided that mere charges of inability to get along with coworkers implicate no liberty interest, *Sullivan v. School Board of Pinellas County,* 773 F.2d 1182, 1187 (11th Cir.1985), whether mere charges of incompetency implicate a liberty interest remains an open question in this circuit.

Other circuits that have addressed whether mere charges of incompetency implicate liberty interests do not treat the issue uniformly. As the Eleventh Circuit noted, the Ninth Circuit generally holds that charges carrying a stigma of moral turpitude implicate the liberty interest protected by due process, but charges of incompetence do not. *See Portman v. County of Santa Clara,* 995 F.2d 898 (9th Cir.1993). The Seventh Circuit, reasoning that liberty is implicated only by charges that result in protracted interruption of employment, holds that labelling someone incompetent does not sufficiently stigmatize them to implicate a liberty interest. *Munson v. Friske,* 754 F.2d 683 (7th Cir.1985). The Second Circuit distinguishes between professional employees and nonprofessional employees: "[A]llegations of professional incompetence, made in connection with an employee's termination, will not support a cause of action for a name-clearing hearing unless the allegations go to the very heart of the employee's professional competence, and threaten to damage his professional reputation, significantly impeding his ability to practice his profession." *O'Neill v. City of Auburn,* 23 F.3d 685 (2nd Cir.1994) (citations and quotations omitted).

The authorities cited above demonstrate that Griswold fails to allege a clearly established constitutional violation.[5] No authorities in this circuit indicate that charges of incompetence alone sufficiently stigmatize an employee to implicate a constitutionally protected liberty interest. Moreover, the law of other circuits leads to the opposite conclusion: charges of incompetence relating to the discharge of an employee such as Griswold do not implicate the employee's liberty interest. Finally and most important, the Eleventh Circuit expressly refused to decide this issue. The court finds that, at the time the supervisors acted, no law compelled the conclusion that labeling Griswold incompetent implicated her constitutional due process rights. Therefore, the court finds that the supervisors in their individual capacities are immune from suit on this claim under § 1983. Accordingly, this claim against the individual supervisors will be dismissed.

### B. *Suit Against the State Under § 1983*

Griswold asserts the § 1983 claim against ADIR as well as the individual supervisors. The Supreme Court of the United States holds that a plaintiff cannot name the state as a party to a § 1983 suit because a state is not a "person" for § 1983 purposes.[6] *Will v. Michigan*, 491 U.S. 58, 65, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989).[7] ADIR is a state agency: "There shall be a Department of Industrial Relations of the State of Alabama, which shall be an executive and administrative department of the state." Ala.Code § 25–2–1 (1975). Accordingly, the § 1983 claim against ADIR will be dismissed.

### III. § 1985 AND § 1986 CLAIMS

Griswold alleges that supervisor Granger circulated a memorandum intended to mislead, threaten, coerce and intimidate her former coworkers and chill their willingness to cooperate in any judicial proceeding. She claims this conduct constitutes the orchestration of a conspiracy to obstruct justice under 42 U.S.C. § 1985(2). Defendants respond that § 1985(2) requires two or more persons acting in concert before liability can attach. (Mem.Supp.Defs.' Mot.Dismiss at 8.) The court agrees with the Defendants that Griswold's complaint does not adequately allege that Granger engaged in a conspiracy.

### A. *Heightened Pleading Requirement for Conspiracy Claims*

The language of § 1985(2) plainly requires a conspiracy of two or more persons: "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, . . .; or, if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating . . . the due course of justice . . ., the party so injured or deprived may have an action for the recovery of damages . . . against any one or more of the conspirators." 42 U.S.C. § 1985(2)–(3).[8] Furthermore, the Eleventh

---

**5.** Indeed, the court questions whether Griswold even states a claim for deprivation of a liberty interest. Because of the court's holding regarding qualified immunity, however, the court need not reach this constitutional issue.

**6.** Section 1983 reads in relevant part as follows: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

. . . . .

42 U.S.C. § 1983.

**7.** *Will* also holds that a state official acting in official capacity *is* a person for purposes of § 1983. *Will*, 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10. Of course, the Eleventh Amendment precludes such a suit for anything other than prospective injunctive relief. *See Id.* The court notes that if Griswold prevailed on such a claim, she would only be entitled to a hearing to refute the stigma of incompetence. She would not be entitled to reinstatement, because the purpose of the due process hearing denied to her was "not to afford an opportunity to recapture [her] previous employment but simply to clear [her] name." *Clemons*, 684 F.2d at 1371 n. 7 (quoting *Dennis v. S. & S. Consolidated Rural High School Dist.*, 577 F.2d 338, 344 (5th Cir.1978)) (internal quotes omitted).

**8.** Griswold may be correct when she argues that only one individual need *act* in furtherance of the conspiracy to have a § 1985(2) claim, (Opp'n Defs.' Mot.Dismiss at 8), but her argument does not respond to Defendants' contention that a

Circuit requires a heightened pleading standard in conspiracy cases because a defendant must be informed of the nature of the conspiracy alleged. *Fullman v. Graddick,* 739 F.2d 553 (11th Cir.1984). Thus, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint. *Kearson v. Southern Bell Telephone & Telegraph Company,* 763 F.2d 405, 407 (11th Cir.1985). As explained below, Griswold fails to sufficiently allege that Granger was a conspirator who acted in furtherance of the conspiracy by circulating the memorandum.

The complaint never alleges that Granger was a conspirator. The complaint alleges that supervisors Long, Caudill and Ashley combined and conspired to deprive Griswold of her civil rights. Regarding supervisor Granger, however, the complaint simply asserts that his circulation of the intimidating memorandum constituted the orchestration of a conspiracy under § 1985(2). Such a conclusory allegation plainly fails the test because "the linchpin for conspiracy is agreement, which presupposes communication...." *Bailey v. Board of County Comm'rs of Alachua County,* 956 F.2d 1112, 1122 (11th Cir.1992). If supervisor Granger conspired and agreed with supervisors Long, Caudill, and Ashley to deprive Griswold of her civil rights, the complaint must allege this conspiracy. Even if the conspiracy between supervisors Long, Caudill, and Ashley existed, supervisor Granger's circulation of the intimidating memorandum, independent of that conspiracy, would not be actionable under 42 U.S.C. § 1985(2). Therefore, because the complaint fails to allege the nature of a conspiracy that included Granger, the court will dismiss Griswold's claims under § 1985(2) against defendants ADIR and Granger.

B. *Derivative Nature of § 1986 Claims*

Griswold's claims under 42 U.S.C. § 1986 rely upon the survival of her § 1985(2) claim. Section 1986 extends liability in damages to "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 ... are about to be committed, and having power to prevent

conspiracy cannot exist without the involvement

or aid in preventing the commission of the same, neglects or refuses so to do...." 42 U.S.C. § 1986. Because the court holds that Griswold fails to state a claim under § 1985(2), the court will dismiss the § 1986 claims as well.

## IV. OTHER ISSUES

Other issues remain that Defendants raised in their motions, but never addressed in their brief. The Defendants' motions took a shotgun approach, raising numerous possible grounds for dismissal. The court considers issues raised but not briefed abandoned by the Defendants. Defendants may, however, raise such issues, properly briefed, in a later motion for summary judgment.

## CONCLUSION

For the reasons explained in this Memorandum Opinion, it is hereby ORDERED as follows:

(1) The Motion to Strike is GRANTED.

(2) The motion to dismiss the ADEA claim (Count One) against ADIR is DENIED.

(3) The motions to dismiss the ADEA claims (Count One) against supervisors Granger, Long, Caudill and Ashley, in both their official and individual capacities, are GRANTED.

(4) The motions to dismiss the § 1983 claims (Count Four) against supervisors Granger, Long, Caudill and Ashley are GRANTED.

(5) The motion to dismiss the § 1983 claim (Count Four) against ADIR is GRANTED.

(6) The motions to dismiss the § 1985(2) claims (Count Three) against ADIR and Granger are GRANTED.

(7) The motions to dismiss the § 1986 claims (Count Three) against ADIR and Granger are GRANTED.

(8) The motions to dismiss for lack of subject matter jurisdiction are DENIED.

(9) The plaintiff is given 10 days from the date of this order to amend her complaint, if she wishes to do so. The defendants are

of at least two persons.

given 10 days from that date to file responsive motions or pleadings.