MOORE, Judge.
 

 Lorenzo Watkins appeals from a judgment entered in favor of defendants Warden Billy Mitchem; Captain Lloyd Wallace; Lieutenant Darwin Halbrooks; and the Alabama Department of Corrections (hereinafter sometimes collectively referred to as “the defendants”). We affirm in part and reverse in part.
 

 Procedural Background
 

 On June 19, 2009, Watkins, who was an inmate in protective custody at the Limestone Correctional Facility at that time, filed a complaint in the Montgomery Circuit Court, alleging that the defendants’ acts and omissions had violated his constitutional rights. Watkins sought injunctive relief as well as monetary damages against the defendants;
 
 [1]
 
 he also requested a jury trial.
 

 On June 30, 2009, the trial court entered an order granting Watkins permission to file his complaint without immediate payment of a filing fee and ordering the Department of Corrections to withhold a designated portion of the funds in Watkins’s prison money account until he had paid the filing fee. The trial court also ordered the defendants to answer Watkins’s complaint
 
 *487
 
 within 30 days and stated: “This matter is ORDERED set on August 25, 2009.”
 

 On August 24, 2009, the defendants collectively filed an answer to Watkins’s complaint, generally denying that Watkins had been deprived of his constitutional rights as alleged in the complaint. The defendants asserted, among other things, that they were entitled to sovereign immunity and qualified immunity and that the complaint failed to state a claim upon which relief could be granted. The defendants also moved for a judgment as a matter of law.
 

 On August 25, 2009, the day after the defendants filed their answer, the trial court conducted the hearing that had been previously set. The defendants, through counsel, appeared at the hearing; Watkins, however, was not present.
 
 [2]
 

 On September 11, 2009, the trial court ordered the matter reset for Monday, October 5, 2009; that order was electronically entered into the State Judicial Information System on September 14, 2009. However, also on September 14, 2009, the trial court entered a judgment, stating:
 

 “THIS CAUSE coming before the Court for trial on the Plaintiffs Complaint and Defendants’ Answer, and after reviewing same, the Court finds that judgment in this cause is due to be entered in favor of the Defendants. Therefore, it is hereby ORDERED, ADJUDGED and DECREED that final judgment be entered in this cause against the Plaintiff and in favor of the Defendants, and it is further ordered that this case be DISMISSED, with prejudice.
 

 “Costs, in the amount of $201.00, are taxed against the Plaintiff in the amount of twenty-five (25%) per available sums of his [prison money] account.”
 

 On September 25, 2009, Watkins filed his notice of appeal.
 

 The Pleadings
 

 Reading Watkins’s complaint in the light most favorable to him,
 
 see Harden v. Ritter,
 
 710 So.2d 1254, 1255-56 (Ala.Civ.App.1997), Watkins alleges that, in November or December 2008, he received a “behavioral citation” for alleged misconduct. Watkins, who asserted that he had formerly served as a corrections officer, alleged that, pursuant to prison policy, a behavioral citation is given for less serious disciplinary infractions and carries no right to due process, while a “disciplinary citation” is given for more serious infractions and entitles an inmate to due process. Watkins further alleged that, despite having received a less serious behavioral citation, he was punished by placement in administrative segregation for six months and by the removal of his privileges. Watkins claimed that he was denied due process to which he was entitled before receiving a punishment of that severity. Watkins also alleged that he notified Lieutenant Hal-brooks and Captain Wallace of those violations but that they failed to take any corrective action.
 

 Watkins also alleged that Warden Mit-chem had adopted a policy of documenting all alleged infractions by inmates in protective custody as “behavioral citations,” to which no due-process rights attached, regardless of the punishment imposed for such infractions. Watkins alleged that the defendants’ acts and omissions had deprived him of due process and equal protection of the law, his right to be free of cruel and unusual punishment, and his right to offer testimony on his own behalf.
 

 
 *488
 
 Watkins attached to his complaint documents from the Limestone Correctional Facility that tended to support his allegations regarding the imposition of extended administrative segregation as punishment for inmates in protective custody charged with a behavioral citation. For example, Watkins attached to his complaint a copy of the December 2008 “behavioral citation” he had received as a result of insubordinate statements he allegedly had made to an officer on November 25, 2008. That citation indicated that “due to inmate’s [protective-custody] status, increase [administrative segregation] for an extended period of time.”
 

 Watkins also attached to his complaint a copy of a letter written by him, dated February 15, 2009, and addressed to “Mrs. Harris,” inquiring when he would receive a “reclassification] hearing.” Across the bottom of that letter was handwritten: “No reclass needed, you were only moved from P.C. [protective custody] to permanent Admin. Segreg. No reclass needed.”
 
 [3]
 

 The defendants filed a joint answer to Watkins’s complaint. In their answer, the defendants asserted, among other things, that no constitutional violations had occurred in punishing Watkins for his misconduct and that they were entitled to sovereign immunity and qualified immunity; the defendants also asserted that they were entitled to a judgment as a matter of law. Considering only Watkins’s allegations and the defendants’ defenses, the trial court entered a judgment in favor of the defendants.
 

 Analysis
 

 On appeal, Watkins contends, among other things, that the record before the trial court was insufficient to support the judgment entered in favor of the defendants. In its judgment, the trial court indicated that it was relying on only Watkins’s complaint and the defendants’ answer.
 
 [4]
 
 Thus, we consider only the facts alleged in Watkins’s complaint and the defenses asserted in the defendants’ answer to determine whether those pleadings properly supported a judgment in favor of the defendants.
 

 We treat the trial court’s judgment as a judgment on the pleadings, pursuant to Rule 12(c), Ala. R. Civ. P. Our standard of review is de novo.
 
 [5]
 

 “ When a motion for judgment on the pleadings is made by a party, “the trial court reviews the pleadings filed in the case and, if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment according to the law.”
 
 B.K.W. Enters., Inc. v. Tractor & Equip. Co.,
 
 603 So.2d 989, 991 (Ala.1992). See also
 
 Deaton, Inc. v. Monroe,
 
 762 So.2d 840 (Ala.2000). A judgment on the pleadings is subject to a de novo review.
 
 Harden v. Ritter,
 
 710 So.2d 1254, 1255 (Ala.Civ.App.1997). A court reviewing a judgment on the pleadings accepts the facts stated in the
 
 *489
 
 complaint as true and views them in the light most favorable to the nonmoving party.
 
 Id.
 
 at 1255-56. If matters outside the pleadings are presented to and considered by the trial court, then the motion for a judgment on the pleadings must be treated as a motion for a summary judgment. See Rule 12(c), Ala. R. Civ. P. Otherwise, in deciding a motion for a judgment on the pleadings, the trial court is bound by the pleadings. See
 
 Stockman v. Echlin, Inc.,
 
 604 So.2d 393, 394 (Ala.1992).’ ”
 

 Medlock v. Safeway Ins. Co. of Alabama,
 
 15 So.3d 501, 507 (Ala.2009) (quoting
 
 Universal Underwriters Ins. Co. v. Thompson,
 
 776 So.2d 81, 82-83 (Ala.2000)). “A motion for judgment on the pleadings ... theoretically is directed towards a determination of the substantive merits of the controversy....” 5C Charles Alan Wright and Arthur R. Miller,
 
 Federal Practice and Procedure
 
 § 1369 at 259 (3d ed.2004) (comparing and contrasting a motion to dismiss and a motion for a judgment on the pleadings).
 

 “[Wjhen it is considering a motion for a judgment on the pleadings, the trial court must review the pleadings filed in the case, and only if the pleadings show that no genuine issue of material fact is presented should the trial court enter a judgment for the moving party. See Rule 12(c), Ala. R. Civ. R;
 
 B.K.W. Enterprises, Inc. v. Tractor & Equipment Co.,
 
 603 So.2d 989 (Ala.1992). A motion for a judgment on the pleadings is designed to provoke a search of the pleadings for the purpose of determining whether there is an issue of fact that requires the introduction of proof.
 
 Warren v. Rasco,
 
 457 So.2d 399 (Ala.1984).”
 

 Ex parte Alfa Fin. Corp.,
 
 762 So.2d 850, 854 (Ala.1999).
 

 Watkins asserted a claim pursuant to 42 U.S.C. § 1983; that statute provides, in pertinent part,
 

 “[ejvery person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.... ”
 

 In
 
 Will v. Michigan Department of State Police,
 
 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court concluded that a state was not a “person” subject to suit under § 1983.
 
 Id.
 
 at 65-66. The Court also concluded that actions filed pursuant to § 1983 and asserting claims for damages against government officials or employees in their official capacities were, in essence, claims asserted against the state itself. Thus, the Court concluded, such claims were no different from claims asserted against the state itself.
 
 Id.
 
 at 71. The Court recognized, however, that a state official in his or her official capacity, when sued for injunctive relief, would be a “person” under § 1983 because “‘official-capacity actions for prospective relief are not treated as actions against the State.’ ”
 
 Id.
 
 at 71 n. 10 (quoting
 
 Kentucky v. Graham,
 
 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).
 
 See also Griswold v. Alabama Dep’t of Indus. Relations,
 
 903 F.Supp. 1492, 1500 n. 7 (M.D.Ala.1995) (applying the rationale of
 
 Will v. Michigan Dep’t of State Police, supra,
 
 to conclude that the Alabama Department of Industrial Relations was immune from suit in former employee’s § 1983 action; also recognizing that governmental officials or governmental em
 
 *490
 
 ployees may be sued in their official capacities but only for prospective injunctive relief).
 

 Against the backdrop of
 
 Will, supra,
 
 and
 
 Griswold, supra,
 
 we consider the claims and defenses asserted in this action. Watkins named the Alabama Department of Corrections as a defendant in this case. As recognized in
 
 Griswold,
 
 a state agency, as an arm of the state, is immune from suit in a § 1983 action. Thus, the trial court properly dismissed Watkins’s claims against the Department of Corrections.
 

 Watkins also named as defendants in this action Warden Mitchem, Captain Wallace, and Lieutenant Halbrooks. From our reading of the complaint, it is unclear whether Watkins intended to assert claims against these defendants in their official capacities, in their individual capacities, or both. At this stage of the litigation, we must construe the complaint liberally in favor of Watkins.
 
 Medlock v. Safeway Ins. Co. of Alabama,
 
 15 So.3d at 507. Thus, we read the complaint as asserting claims against the individual defendants in both their official and individual capacities.
 

 In the defendants’ answer, they stated: “The defendants named in their official capacity plead the affirmative defense of sovereign immunity.” Sovereign immunity, arising pursuant to the Alabama Constitution of 1901, § 14, provides no protection to the defendants because “[s]ection 14 immunity has no applicability to federal-law claims.”
 
 Bedsole v. Clark,
 
 33 So.3d 9, 13 (Ala.Civ.App.2009) (rejecting defendants’ argument that they were entitled to a summary judgment on plaintiffs 42 U.S.C. § 1983 claim on the basis of sovereign immunity).
 
 See also Ex parte Russell,
 
 31 So.3d 694, 696 (Ala.Civ.App.2009) (actions seeking a declaratory judgment or actions seeking to enjoin state officials from enforcing an unconstitutional law are not subject to sovereign immunity).
 
 But see Will, supra
 
 (recognizing that governmental officials and governmental employees are subject to suit in § 1983 actions for prospective injunctive relief); and
 
 Griswold, supra
 
 (same). Because Watkins’s complaint asserted only federal-law claims, the trial court could not have properly granted the individual defendants, named in their official capacities, a judgment on the pleadings on the basis of sovereign immunity. To the extent Watkins sought monetary damages against the individual defendants in their official capacities, however, the trial court’s judgment in favor of the individual defendants is affirmed because claims for such relief are barred under § 1983.
 
 See Will, supra;
 
 and
 
 Griswold, supra.
 

 The individual defendants also asserted in their answer: “The defendants named in then- individual capacity plead the affirmative defense of qualified immunity.” Qualified immunity applies only to governmental officials and governmental employees sued in their individual capacities.
 
 See Flood v. State of Alabama Dep’t of Indus. Relations,
 
 948 F.Supp. 1535, 1547 (M.D.Ala.1996) (discussing application of qualified immunity). In
 
 Ex parte Madison County Board of Education,
 
 1 So.3d 980 (Ala.2008), our supreme court stated:
 

 “ ‘ “Qualified immunity is designed to allow government officials to avoid the expense and disruption of going to trial, and is not merely a defense to liability.”
 
 Hardy v. Town of Hayneville,
 
 50 F.Supp.2d 1176, 1189 (M.D.Ala.1999). “An official is entitled to qualified immunity if he is performing discretionary functions and his actions do ‘ “not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” ’ ”
 
 Hardy,
 
 50 F.Supp.2d at 1189 (quoting
 
 Lancaster v.
 
 
 *491
 

 Monroe County,
 
 116 F.3d 1419, 1424 (11th Cir.1997)).’ ”
 

 Ex parte Madison County Bd. of Educ.,
 
 1 So.3d at 990 (quoting
 
 Ex parte Alabama Dep’t of Youth Servs.,
 
 880 So.2d 393, 402 (Ala.2003)).
 

 In
 
 Hardy v. Town of Hayneville
 
 50 F.Supp.2d 1176 (M.D.Ala.1999), an inmate brought claims, pursuant to 42 U.S.C. § 1983, against an arresting police officer, the chief of police, the mayor, and the Town of Hayneville. Upon consideration of the defendants’ motion to dismiss the inmate’s claims, the United States District Court for the Middle District of Alabama discussed at length the law applicable to the affirmative defense of qualified immunity. The court stated:
 

 “[The] Defendants ... have asserted the defense of qualified immunity in a Rule 12(b)(6) motion to dismiss, and they are entitled to qualified immunity at this stage in the proceedings if the Plaintiffs[’] complaint fails to allege a violation of a clearly established constitutional right.
 
 Santamorena v. Georgia Military College,
 
 147 F.3d 1337, 1340 (11th Cir.1998). To overcome this immunity, a plaintiff has the burden of ‘pointing to case law which predates the official’s alleged improper conduct, involves materially similar facts, and truly compels the conclusion that the plaintiff had a right under federal law.’
 
 Id.
 
 When considering whether the law applicable to certain facts is clearly established, the facts of the case need not be the same, but must be materially similar.
 
 Id.
 
 at 1339. Only in exceptional cases are the words of a federal statute or constitutional provision specific enough, or the general constitutional rule already identified in decisional law so clearly applicable, so that specific case law is not required.
 
 See id.
 
 at 1339 n. 6. ‘If ease law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.’
 
 Lassiter v. Alabama A & M Univ., Bd. of Trustees,
 
 28 F.3d 1146, 1150 (11th Cir.1994) (internal quotations and citations omitted).”
 

 50 F.Supp.2d at 1189-90. Because in response to the individual defendants’ motions to dismiss the inmate in
 
 Hardy
 
 failed to provide the necessary caselaw, the district court granted the motions to dismiss as to the defendants sued in their individual capacities.
 
 Id.
 
 at 1190.
 

 Upon consideration of the claims asserted in Watkins’s complaint and the defenses asserted in the defendants’ answer, the trial court entered a judgment in favor of the defendants. Because the trial court considered only those two pleadings, the trial court could not have possibly considered any response filed by Watkins to the defendants’ claim of qualified immunity. Thus, the trial court has not afforded Watkins the opportunity to rebut the defendants’ claim that they were entitled to qualified immunity. To the extent the trial court entered a judgment in favor of the individual defendants on the basis of that affirmative defense, that judgment was prematurely entered.
 

 In their answer, the defendants also asserted that Watkins was “charged with a Behavioral Citation and was afforded all necessary and required due process associated therewith under
 
 Wolff v. McDonnell,
 
 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).” That defense required the trial court to consider whether Watkins’s allegations stated a claim; that defense, in turn, requires this court to do the same.
 

 In
 
 Sandin v. Conner,
 
 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court clarified the circumstances in which changes made to an inmate’s conditions of confinement as a result of disciplinary action will deprive
 
 *492
 
 him or her of a constitutionally protected liberty interest:
 

 “States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.”
 

 515 U.S. at 483-84 (citations omitted). In
 
 Sandin, supra,
 
 the Court concluded that 30 days in segregation did not impinge on the inmate’s protected liberty interest so as to trigger his due-process rights because the disciplinary segregation at issue was substantially similar to the conditions imposed on inmates segregated for other reasons and the inmate’s disciplinary record was later expunged; thus, the disciplinary offense would not impact the inmate’s chance of parole.
 
 Id.
 
 at 486-87.
 

 In
 
 Wilkinson v. Austin,
 
 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), the Supreme Court again acknowledged that the standard established in
 
 Sandin, supra,
 
 required a court to determine if a prison policy “ ‘impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.’”
 
 Wilkinson,
 
 545 U.S. at 223 (quoting
 
 Sandin,
 
 515 U.S. at 484.) The Court discussed its holding in
 
 Sandin, supra,
 
 and stated:
 

 “Sandin
 
 found no liberty interest protecting against a 30-day assignment to segregated confinement because it did not ‘present a dramatic departure from the basic conditions of [the inmate’s] sentence.’
 
 Id.
 
 at 485. We noted, for example, that inmates in the general population experienced ‘significant amounts of “lockdown time” ’ and that the degree of confinement in disciplinary segregation was not excessive.
 
 Id.,
 
 at 486. We did not find, moreover, the short duration of segregation to work a major disruption in the inmate’s environment.
 
 Ibid.”
 

 545 U.S. at 223.
 

 From our reading of
 
 Sandin, supra,
 
 and
 
 Wilkinson, supra,
 
 it is clear that the type of deprivation and the degree of that deprivation determines whether an inmate’s right to due process is triggered. Thus, simply because the defendants labeled the citation given to Watkins as a “behavioral” one rather than as a “disciplinary” one does not control whether Watkins’s right to due process was triggered.
 

 The standard established in
 
 Sandin
 
 has since been applied to conclude that an inmate disciplined for a minor behavioral infraction by short-term segregation from his or her regular prison placement is not entitled to a due-process hearing or other due-process protections.
 
 See, e.g., Rodgers v. Singletary,
 
 142 F.3d 1252, 1253 (11th Cir.1998) (affirming the lower court’s holding that a two-month confinement in administrative segregation was not a deprivation of a constitutionally protected liberty interest). In
 
 Williams v. Fountain,
 
 77 F.3d 372 (11th Cir.1996), however, the United States Court of Appeals for the Eleventh Circuit determined that placement in solitary confinement for 12 months as punishment for a disciplinary infraction triggered the inmate’s due-process rights. The Eleventh Circuit Court of Appeals stated that 12 months of solitary confinement “represents] substantially more ‘atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life,’ [and] we assume that [a prisoner suffering such] a liberty
 
 *493
 
 deprivation [is] entitled to due process.”
 
 Williams,
 
 77 F.3d at 374 n. 3.
 

 In their answer, the defendants asserted that Watkins was “charged with a Behavioral Citation and was afforded all necessary and required due process associated therewith under
 
 Wolff v. McDonnell,
 
 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).” In
 
 Wolff v. McDonnell,
 
 the Supreme Court stated:
 

 “As the [state statute under consideration] makes clear, there are basically two kinds of punishment for flagrant or serious misconduct. The first is the forfeiture or withholding of good-time credits, which affects the term of confinement, while the second, confinement in a disciplinary cell, involves alteration of the conditions of confinement. If the misconduct is less than flagrant or serious, only deprivation of privileges results.”
 

 418 U.S. 539, 547, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (footnote omitted). In
 
 Wolff,
 
 only inmates determined to be guilty of a serious misconduct violation were confined in a disciplinary cell and suffered the loss of any good-time credits earned; those disciplinary actions were found to trigger an inmate’s due-process rights because they potentially affected the term of the inmate’s confinement and potentially altered the conditions of the inmate’s confinement.
 
 Id.
 
 Those inmates determined to have committed only minor behavioral infractions were punished only by a loss of privileges. Thus, in
 
 Wolff,
 
 those inmates found to have committed a minor behavioral infraction were not disciplined in such a manner as to potentially suffer a change in the conditions of their confinement.
 

 In this case, Watkins alleges that he was confined for six months to administrative segregation — a punishment that potentially constitutes a change in the conditions of his confinement, thereby triggering his due-process rights. Watkins asserts that that punishment was imposed without due process. Additionally, the defendants themselves characterized Watkins’s violation as a minor behavioral citation. Thus, we fail to see how the defendants’ reliance upon
 
 Wolff, supra,
 
 without further elaboration, could have entitled them to a judgment on the pleadings.
 

 To the extent the defendants claim that no constitutional deprivation occurred because Watkins’s right to due process was not triggered by the receipt of a mere “behavioral” citation, that argument fails to respond to Watkins’s allegation that Warden Mitchem adopted and implemented a policy of documenting
 
 all
 
 infractions — whether minor or substantial — committed by inmates in protective custody at the Limestone Correctional Facility by the issuance of “behavioral” citations. Thus, the defendants’ argument offers no support for the judgment entered in their favor. As stated above, it is the nature of the deprivation that determines whether the protections of due process are triggered, not the label given to the offense that ultimately gave rise to the deprivation.
 
 See Sandin, supra.
 

 [6]
 

 Further, because the trial court considered whether the defendants were entitled to a judgment on the pleadings, the record is wholly devoid of any evidence to establish that six months in administrative segregation did not represent a significant departure from the normal conditions of
 
 *494
 
 Watkins’s confinement and did not work a major disruption in Watkins’s prison environment, sufficient to trigger his due-process rights.
 
 See Sandin, supra.
 
 Under
 
 Sandin,
 
 that is the issue alleged in Watkins’s complaint.
 

 The defendants also asserted in their answer the affirmative defenses of estop-pel, illegality, waiver, and unclean hands. We find it sufficient to state that, without factual development and evidentiary support, those defenses provided no basis upon which the trial court could have entered a judgment on the pleadings in favor of the defendants.
 

 We affirm the judgment entered in favor of the Department of Corrections; we also affirm the judgment as to any claims asserted against the individual defendants in their official capacities seeking monetary damages. The trial court’s judgment is due to be reversed, however, as to any claims asserted against the individual defendants in their official capacities and seeking only prospective injunctive relief and as to any claims asserted against the defendants in their individual capacities. We express no opinion on the likelihood of success on Watkins’s claims; we simply find that the trial court erred in entering a judgment on the pleadings in favor of the individual defendants at this stage of the litigation. The cause is remanded to the trial court for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, concur.
 

 [1]
 

 . It is unclear whether Watkins intended to state any claims against the defendants in their individual capacities.
 

 [2]
 

 . On September 2, 2009, Watkins filed a "Response to Defendants’ Answer.” As explained in more detail below, we need not consider Watkins’s response.
 

 [3]
 

 . The author of that writing is not indicated.
 

 [4]
 

 . That judgment incorrectly states that a trial of Watkins’s claims was held; only a hearing was held before the trial court on August 25, 2009.
 

 [5]
 

 . We also note that, even though exhibits were attached to Watkins's complaint, the trial court's consideration of those exhibits did not require the trial court to treat the defendants'
 
 motion as
 
 a
 
 motion
 
 for a summary judgment.
 
 See, e.g., Wilson v. First Union Nat'l Bank of Georgia,
 
 716 So.2d 722, 726 (Ala.Civ.App.1998) (holding that the trial court’s consideration of documents attached to the complaint, the identity and authenticity of which were not challenged, did not require conversion of a motion to dismiss into a motion for a summary judgment).
 

 [6]
 

 . We acknowledge that the holding of
 
 Wolff v. McDonnell, supra,
 
 has been further refined in
 
 Sandin, supra.
 
 We have already addressed
 
 Sandin;
 
 as explained herein,
 
 Sandin
 
 also does not entitle the defendants to a judgment on the pleadings. We also note that the defendants did not rely on
 
 Sandin
 
 in their answer.