THOMPSON, Presiding Judge.
 

 Farrell Bedsole appeals from the trial court’s summary judgments in favor of Anthony Clark, the sheriff of Covington County; Jerry Edgar, the jail administrator for the Covington County Jail; and Dr. Millard McWhorter, the medical director of the Covington County Jail. Bedsole, an inmate at the Covington County Jail (“the jail”) at the time the events made the basis of this matter occurred, sued numerous people connected with the jail alleging various claims arising out of treatment he received for a sore on his abdomen, which Bedsole alleged was the result of a spider bite. The trial court entered a series of summary judgments that eventually disposed of all of Bedsole’s claims against all defendants. Bedsole, acting pro se, appeals only as to the judgments entered in favor of Clark, Edgar, and Dr. McWhorter. He filed his appeals with the Alabama Supreme Court, which transferred the appeals to this court pursuant to § 12-2-7(6), Ala.Code 1975. This court consolidated the appeals.
 

 Evidence submitted in support of, and in opposition to, the defendants’ motions for a summary judgment tended to show the following. In June 2005, Bedsole was being held in the jail awaiting sentencing after having been convicted of four sex offenses. On June 18, 2005, he completed a sick-call slip, complaining of back pain. The next day, when a nurse with the medical staff at the jail saw Bedsole, the nurse noticed that Bedsole had a sore on his abdomen and that the sore had drainage. In accordance with a standing order from Dr. McWhorter concerning sores like Bed-sole’s, the nurse medicated Bedsole with Bactrim, an antibiotic, and bandaged the sore. The nurse also recommended that Bedsole be removed from the general inmate population until Dr. McWhorter could treat him. She made the recommendation because she believed that Bedsole had a staph infection. Jail officials followed the nurse’s recommendation and moved Bedsole from the general population.
 

 Later the same day, Bedsole completed another sick-call slip, this time complaining of a spider bite on his abdomen. Dr. McWhorter saw Bedsole the next day, June 15, 2005. Dr. McWhorter ordered that Bedsole was to continue receiving Bactrim plus a “Bacitracia” drop on the wound until it healed. Three days later, on June 18, 2005, a nurse treating Bed-sole’s sore noted that it was about the size of a quarter and that it appeared to require lancing. The next day, June 19, Bedsole was taken to the emergency room at Andalusia Regional Hospital for treatment of the sore. He was discharged from the emergency room of the hospital to the jail with instructions that he should be treated with Granulex spray to the sore, that he should have “wet to dry dressings” daily, and that, if his condition worsened, he should have a follow-up visit with Dr. McWhorter or a surgeon. The discharge instructions did not include a diagnosis of spider bite, and they did not require Bed-sole to return to the hospital, unless his condition worsened.
 

 
 *12
 
 In compliance with the hospital’s discharge instructions, on June 20, 2005, Dr. McWhorter ordered that Bedsole’s sore be sprayed twice each day with “TBC,” which, according to Dr. McWhorter, is “essentially the same” as Granulex spray, and treated with a wet-to-dry dressing. The Bac-trim was discontinued and replaced with doxycycline twice each day for ten days. A notation on Bedsole’s medical record states that on July 2, 2005, the sore was the size of a dime, and no drainage was noted. A notation made two days later stated that the “area [was] healing good.” Bedsole made no further complaints regarding the sore. On July 20, 2005, Bed-sole was transported from the jail to the custody of the Alabama Department of Corrections.
 

 In January 2007, Bedsole filed a civil action alleging that, while he was an inmate at the jail, jail officials and Dr. McWhorter acted with deliberate indifference to his serious medical needs and that Clark and Edgar failed to adequately train and supervise Dr. McWhorter in violation of Bedsole’s constitutional rights. He also appeared to assert a claim of medical malpractice against Dr. McWhorter. As mentioned above, the trial court entered summary judgments in favor of all defendants on all claims.
 

 On appeal, it appears that Bedsole contends that the trial court erred in entering summary judgments in favor of Dr. McWhorter, Clark, and Edgar only as to his claims that they acted with deliberate indifference to his medical needs and that Clark and Edgar failed to adequately train and supervise Dr. McWhorter.
 

 “In reviewing a summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law.
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.
 
 Hanners v. Balfour Guthrie, Inc.,
 
 564 So.2d 412 (Ala.1990). Furthermore, ‘[i]f the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by summary judgment.’
 
 McDonald v. U.S. Die Casting & Dev. Co.,
 
 585 So.2d 853, 855 (Ala.1991).”
 

 Taylor v. Striplin,
 
 974 So.2d 298, 301 (Ala.2007).
 

 Although the trial court did not provide a reason as to why it entered the summary judgment in favor of Clark and Edgar, this court may affirm a summary judgment on any valid ground, with certain exceptions not applicable in this case.
 
 Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C.,
 
 881 So.2d 1013, 1020 (Ala.2003). Clark and Edgar first argue to this court that they were entitled to a summary judgment based upon absolute immunity pursuant to Article I, § 14, Ala. Const.1901. A claim alleg
 
 *13
 
 ing deliberate indifference to an inmate’s serious medical needs in violation of the inmate’s constitutional rights is a federal action, brought pursuant to 42 U.S.C. § 1983.
 
 [1]
 
 Section 14 immunity has no applicability to federal-law claims.
 
 King v. Correctional Med. Serv., Inc.,
 
 919 So.2d 1186, 1191 (Ala.Civ.App.2005).
 

 Alternatively, Clark and Edgar assert, they were entitled to a summary judgment based upon qualified immunity.
 

 ‘“Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates “clearly established statutory or constitutional rights of which a reasonable person would have known.” ’
 
 Dalrymple v. Reno,
 
 334 F.3d 991, 994 (11th Cir.2003) (quoting
 
 Hope v. Pelzer,
 
 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting
 
 Harlow v. Fitzgerald,
 
 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982))),”
 
 cert. denied,
 
 541 U.S. 935, 124 S.Ct. 1655, 158 L.Ed.2d 355 (2004);
 
 see also Lee v. Ferraro,
 
 284 F.3d 1188, 1194 (11th Cir.2002) (ruling that qualified immunity ‘protect[s] from suit “all but the plainly incompetent or one who is knowingly violating the federal law” ’ (quoting
 
 Willingham v. Loughnan,
 
 261 F.3d 1178, 1187 (11th Cir.2001))). When a government official seeks summary judgment based on qualified immunity, courts apply a two-step test to determine whether qualified immunity is appropriate. First, ‘[a] court required to rule upon the qualified immunity issue must consider ... this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer’s conduct violated a constitutional right?’
 
 Saucier v. Katz,
 
 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). When a court answers this question affirmatively, the court moves to the second step, which is to consider whether the constitutional right was ‘clearly established’ on the date of the violation.
 
 Id.”
 

 Andujar v. Rodriguez,
 
 486 F.3d 1199, 1202-03 (11th Cir.2007).
 

 In determining whether Bedsole’s allegation that Clark and Edgar violated his constitutional rights by acting with deliberate indifference to his serious medical needs, Bedsole must first prove that he in fact had a serious medical need.
 
 Andujar,
 
 486 F.3d at 1203. The United States Court of Appeals for the Eleventh Circuit has defined a “serious medical need” as “ ‘one that is so obvious that even a lay person would easily recognize the necessity for a doctor’s attention.’”
 
 Farrow v. West,
 
 320 F.3d 1235, 1243 (11th Cir.2003) (quoting
 
 Hill v. Dekalb Reg’l Youth Det. Ctr.,
 
 40 F.3d 1176, 1187 (11th Cir.1994)).
 

 If Bedsole were to establish that he had a serious medical need, he must then satisfy a subjective inquiry, i.e., that Clark and Edgar acted with deliberate indifference to
 
 *14
 
 that serious medical need.
 
 Andujar,
 
 486 F.3d at 1208. “[T]he case law ha[s] made it clear that an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.”
 
 Lancaster v. Monroe County, Alabama,
 
 116 F.3d 1419, 1425 (11th Cir.1997). To establish that Clark and Edgar acted with deliberate indifference, Bedsole must prove three things: (1) that Clark and Edgar knew of a risk of serious harm, (2) that Clark and Edgar disregarded that risk, and (3) that the conduct of Clark and Edgar amounted to more than gross negligence.
 
 Andujar,
 
 486 F.3d at 1203-04 (citing
 
 Bozeman v. Orum,
 
 422 F.3d 1265, 1272 (11th Cir.2005)).
 

 When viewing the evidence in the light most favorable to Bedsole, as we are required to do,
 
 see Taylor v. Striplin,
 
 974 So.2d at 301, we find that Bedsole cannot establish that Clark and Edgar acted with deliberate indifference with regard to Bed-sole’s sore. The evidence is undisputed that the sore was first noticed by a jail nurse while she was treating Bedsole for his complaint of back pain. Bedsole had not requested treatment for the sore, and there is no evidence indicating that, before the nurse recommended treatment for the sore, Bedsole recognized the necessity for medical treatment for the sore. Thus, whether Bedsole even had a serious medical need is questionable. However, out of an abundance of caution, we will consider whether Clark and Edgar acted with deliberate indifference to treatment of the sore.
 

 The evidence is undisputed that, upon the nurse’s recommendation that Bedsole be moved from the general population while he was waiting to be seen by Dr. McWhorter, the medical director for the jail, jail officials immediately undertook to remove Bedsole from the general population. The evidence is also undisputed that Bedsole was not denied timely treatment of the sore and that, when medical personnel sought to have Bedsole transported to the hospital to have the sore lanced, jail personnel complied with the request, taking Bedsole to the emergency room the following morning.
 

 Bedsole has presented no evidence indicating that Clark or Edgar denied him medical care or delayed in providing him with medical care. In fact, the undisputed evidence is that Bedsole’s medical needs were met in a timely manner. In his brief on appeal, Bedsole states that, when he went to the hospital, the “spider bite” was not ready for lancing and an appointment was made for him to return to the hospital to have the spider bite lanced. However, there is no evidence in the record to support Bedsole’s assertion. The discharge instructions from the hospital do not mention an appointment to return to the hospital. They provide only that Bedsole have a follow-up visit with either Dr. McWhorter or a surgeon if his “condition” worsened. The instructions do not even diagnose a spider bite, contrary to Bedsole’s assertion.
 

 There is no evidence from which a finder of fact could determine that Clark or Edgar’s conduct rose to the level of deliberate indifference; therefore, Bedsole has failed to show that Clark or Edgar’s conduct was constitutionally impermissible.
 
 See Andujar,
 
 486 F.3d at 1203-04.
 

 Because the conduct of Clark and Edgar did not violate Bedsole’s constitutional rights, they are entitled to qualified immunity.
 
 Id.
 
 Accordingly, we conclude that the trial court properly entered the summary judgment in favor of Clark and Edgar on Bedsole’s claim of deliberate indifference to his serious medical needs.
 

 In his complaint, Bedsole also alleged that Dr. McWhorter acted with de
 
 *15
 
 liberate indifference to Bedsole’s serious medical needs. As this court has noted,
 

 “ ‘[deliberate indifference to serious medical needs of prisoners constitutes the “unnecessary and wanton infliction of pain,” ’ and is a violation of the Eighth Amendment right to be free from cruel and unusual punishment.
 
 Estelle v. Gamble,
 
 429 TJ.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference can be manifested by prison personnel intentionally denying or delaying access to medical care, by prison personnel interfering with prescribed treatment, or by prison doctors responding indifferently to a prisoner’s medical needs.
 
 Estelle,
 
 429 U.S. at 104-05, 97 S.Ct. 285. However,
 

 “ ‘an inadvertent failure to provide adequate medical care cannot be said to constitute “an unnecessary and wanton infliction of pain” or to be “repugnant to the conscience of mankind.” Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.’
 

 “Id.
 
 at 105-06, 97 S.Ct. 285.”
 

 King v. Correctional Med. Serv., Inc.,
 
 919 So.2d at 1192.
 

 In this case, the evidence is undisputed that Bedsole received treatment for the sore on his abdomen. Bedsole was even taken out of the jail and transported to the local hospital for treatment. After Bedsole was seen by the physicians at the hospital, Dr. McWhorter provided treatment to him pursuant to the instructions provided by the hospital physicians. The evidence is also undisputed that Bedsole’s sore healed under the care and treatment provided by Dr. McWhorter and his staff at the jail. Bedsole has provided no evidence indicating that Dr. McWhorter acted with deliberate indifference to his wound. As this court pointed out in
 
 King,
 
 “[e]ven assuming that the medical care provided to [the inmate] had been negligently rendered, no constitutional claim arises from what is essentially a claim of medical malpractice....”
 
 King,
 
 919 So.2d at 1192. There is simply no evidence indicating that Dr. McWhorter acted improperly in any way, and certainly no evidence indicating that he acted with deliberate indifference to Bedsole’s sore. Therefore, the summary judgment in favor of Dr. McWhorter on the deliberate-indifference claim is due to be affirmed.
 

 Because we find that Dr. McWhorter’s conduct in treating Bedsole was not improper, Bedsole’s claim that Clark and Edgar failed to adequately train and supervise Dr. McWhorter must also fail. A claim of negligent failure to train or supervise requires the following showing:
 

 “ ‘ “In the master and servant relationship, the master is held responsible for his servant’s incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.” ’ ”
 

 Big B, Inc. v. Cottingham,
 
 634 So.2d 999, 1003 (Ala.1993) (quoting
 
 Lane v. Central Bank of Alabama, N.A.,
 
 425 So.2d 1098, 1100 (Ala.1983), quoting
 
 Thompson v. Havard,
 
 285 Ala. 718, 723, 235 So.2d 853, 858 (1970)). Here, Bedsole has failed to show that Dr. McWhorter acted incompetently. Therefore, Clark and Edgar cannot be held liable for the claim of negligent failure
 
 *16
 
 to train or supervise, which requires a showing of incompetence on the part of Dr. McWhorter. Therefore, the trial court properly entered a summary judgment in favor of Clark and Edgar on Bedsole’s claim of negligent failure to train or supervise.
 

 In his brief on appeal, Bedsole does not mention his claim of medical malpractice against Dr. McWhorter. Therefore, we deem as abandoned any challenge to the summary judgment entered in favor of Dr. McWhorter on that claim.
 
 Horn v. Fadal Machining Ctrs., LLC,
 
 972 So.2d 63, 68 (Ala.2007);
 
 Chunn v. Whisenant,
 
 877 So.2d 695, 601 (Ala.2003) (an argument not made on appeal is considered abandoned or waived).
 

 For the reasons set forth above, the judgments of the trial court are affirmed.
 

 2080483 — AFFIRMED.
 

 2080603 — AFFIRMED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . 42 U.S.C. § 1983 provides:
 

 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer’s judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."