PER CURIAM.
Danny W. Turner appeals from the judgment entered in favor of Willie Moore, Lindsey Self Smith, and Emmett J. Graham (hereinafter collectively “the defendants”).[1] In his complaint, Turner alleged that the defendants were liable for various torts because, he said, they improperly withheld $24 from money deposited into his Prisoner Money on Deposit (“PMOD”) account to pay for medical co-pays. Tur *844 ner asserts that, pursuant to the regulations of the Alabama Department of Corrections (“the DOC”), he was exempt from having to pay the co-pays because, he says, he is a chronic-care patient.
On January 27, 2011, the defendants filed a motion for a summary judgment and attached several exhibits to the motion. The next day, January 28, 2011, the trial court entered a judgment granting the defendants’ motion and dismissing Turner’s action. The trial court did not state its basis for the dismissal. Turner appealed on February 8, 2011.
Turner contends that the trial court erred in entering a judgment in favor of the defendants without giving him the opportunity to respond to their motion and because genuine issues of material fact exist that would preclude a summary judgment. At the outset, the defendants assert that, because Turner did not file a postjudgment motion challenging the trial court’s decision to grant their summary-judgment motion or challenging its having granted the motion before Turner had had an opportunity to respond, neither issue raised by Turner has been preserved for appellate review.
The defendants correctly point out that
“[this court will not place a trial court ‘ “ ‘in error on matters which the record reveals it neither ruled upon nor was presented, the opportunity to rule upon.”” Verneuille [v. Buchanan Lumber of Mobile, Inc.], 914 So.2d [822,] 824 [ (Ala.2005) ] (quoting J.K. v. Lee County Dep’t of Human Res., 668 So.2d 813, 817 (Ala.Civ.App.1995), quoting in turn Wilson v. State Dep’t of Human Res., 527 So.2d 1822, 1324 (Ala.Civ.App. 1988) (emphasis added in Vemeuille)).”
A.W., by and through Hogeland v. Wood, 57 So.3d 751, 759 (Ala.2010).
Because Turner never raised in the trial court the issue of whether the trial court erred in entering the judgment without allowing him the opportunity to respond to the defendants’ motion, the trial court did not have the opportunity to rule on that issue. Thus, we agree with the defendants that the issue of the timing of the entry of the judgment cannot be considered on appeal. However, as to the propriety of the judgment itself, that issue was squarely before the trial court on the defendants’ motion. The issue before the trial court was whether the defendants had met their burden of demonstrating they were entitled to a judgment based upon the pleadings or on the materials submitted to the trial court. Because that issue was considered and decided by the trial court, this court can consider the propriety of the judgment.
In reviewing whether the trial court erred in dismissing Turner’s action, we first note that, although the defendants titled their motion as one seeking a summary judgment, “[i]t is well settled that ‘[t]his Court will look at the substance of a motion rather than its title, to determine how that motion is to be considered under the Alabama Rules of Civil Procedure.’ ” Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.C., 35 So.3d 601, 604 (Ala.2009) (quoting Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 562-63 (Ala. 2005)). The substance of the defendants’ motion indicates that they were seeking a dismissal of the action on the grounds that Turner’s complaint failed to establish that any act or omission of the defendants violated any of Turner’s constitutional rights; that Turner had failed to state a claim upon which relief could be granted; that Turner had failed to avail himself of administrative remedies before bringing this action; that they were not proper parties to the action; and that, to the extent they *845 were sued in their official capacities under 42 U.S.C. § 1983, as employees of the State of Alabama, they could not be held liable for damages. To the extent they were sued in their individual capacities, the defendants asserted that the were protected from liability by the doctrine of qualified immunity.
We cannot determine from the record whether the trial court considered the exhibits attached to the defendants’ motion when it entered the judgment. “ ‘If matters outside the pleadings are presented to and considered by the trial court, then the motion for a judgment on the pleadings must be treated as a motion for a summary judgment. See Rule 12(c), Ala. R. Civ. P. Otherwise, in deciding a motion for a judgment on the pleadings, the trial court is bound by the pleadings. See Stockman v. Echlin, Inc., 604 So.2d 393, 394 (Ala.1992).’ ” Medlock v. Safeway Ins. Co. of Alabama, 15 So.3d 501, 507 (Ala.2009) (quoting Universal Underwriters Ins. Co. v. Thompson, 776 So.2d 81, 82-83 (Ala.2000)). For purposes of this opinion, we will assume that the trial court did consider the evidence the defendants submitted in support of their motion; therefore, we will use the standard applicable in reviewing the propriety of a summary judgment.
“Summary judgment is appropriate only when ‘there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.’ Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Economic & Indus. Dev. Auth, 749 So.2d 425 (Ala.1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int’l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996). In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court. Dobbs, supra.”
Ex parte Kraatz, 775 So.2d 801, 803 (Ala. 2000).
“Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
In their answer to Turner’s complaint, the defendants admitted that money was deducted from Turner’s PMOD account for co-pays that they claimed Turner owed for eight medical visits he had made while incarcerated at the Elmore Correctional Facility and two other prisons. As mentioned, Turner contended that, because he is a chronic-care patient, DOC regulations exempt him from having to pay the co-pays. The defendants asserted that a summary judgment was proper because, they say, in withholding the money Turner allegedly owed for medical co-pays, Turner’s constitutional rights were not infringed. In support of their argument, the defendants cited caselaw from both Alabama and federal courts approving DOC’s practice of charging inmates medical co-pays and finding that such charges could be imposed without violating inmates’ constitutional rights. However, DOC Administrative Regulation No. 601, § IV.C.l., a *846 copy of which the defendants attached to their motion, states that “inmates will not be charged” a co-pay for medical visits to chronic-care clinics, among several other enumerated reasons. In Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court of the United States discussed what constitutes a constitutionally protected property interest:
“To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
“Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.”
Therefore, the regulation stating that an inmate will not be charged a medical copay under certain circumstances does create a property interest entitled to protection under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Alabama Constitution of 1901, Art. I, § 6.
In his complaint, Turner alleged that he is a chronic-care patient. Therefore, at a minimum, a genuine issue of material fact exists as to whether, pursuant to DOC’s own regulations, the co-pays at issue here were improperly deducted from his PMOD account. Accordingly, we conclude that the defendants failed to demonstrate that there was no genuine issue of material fact or that they were entitled to a judgment as a matter of law. Because they failed to meet their burden, see Dow, 897 So.2d at 1038-39, the burden did not shift to Turner to produce substantial evidence of a genuine issue of material fact, and the trial court erred in entering the summary judgment.
The defendants also contend that they were immune from liability under “all applicable immunities,” including qualified, absolute, discretionary-function, and state-agent immunity. According to the pleadings submitted by all the parties, each of the defendants was an employee at the Elmore Correctional Facility, where Turner was an inmate at the time this civil action was filed. The complaint states that each defendant is being sued individually and that he or she acted under the color of law. In other words, even though Turner did not state the specific “tort” upon which he was basing his cause of action, it appears that he asserted claims against the defendants pursuant to 42 U.S.C. § 1983. That statute provides, in pertinent part,
“[ejvery person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.... ”
This court recently addressed the application of immunity to § 1983 actions.
*847 “In Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court concluded that a state was not a ‘person’ subject to suit under § 1983. Id. at 65-66. The Court also concluded that actions filed pursuant to § 1983 and asserting claims for damages against government officials or employees in their official capacities were, in essence, claims asserted against the state itself. Thus, the Court concluded, such claims were no different from claims asserted against the state itself. Id. at 71. The Court recognized, however, that a state official in his or her official capacity, when sued for injunc-tive relief, would be a ‘person’ under § 1983 because ‘“official-capacity actions for prospective relief are not treated as actions against the State.” ’ Id. at 71 n. 10 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). See also Griswold v. Alabama Dep’t of Indus. Relations, 903 F.Supp. 1492, 1500 n. 7 (M.D.Ala.1995) (applying the rationale of Will v. Michigan Dep’t of State Police, supra, to conclude that the Alabama Department of Industrial Relations was immune from suit in former employee’s § 1983 action; also recognizing that governmental officials or governmental employees may be sued in their official capacities but only for prospective in-junctive relief).
“Against the backdrop of Will, supra, and Griswold, supra, we consider the claims and defenses asserted in this action. Watkins named the Alabama Department of Corrections as a defendant in this case. As recognized in Griswold, a state agency, as an arm of the state, is immune from suit in a § 1983 action. Thus, the trial court properly dismissed Watkins’s claims against the Department of Corrections.
“Watkins also named as defendants in this action Warden Mitchem, Captain Wallace, and Lieutenant Halbrooks. From our reading of the complaint, it is unclear whether Watkins intended to assert claims against these defendants in their official capacities, in their individual capacities, or both. At this stage of the litigation, we must construe the complaint liberally in favor of Watkins. Medlock v. Safeway Ins. Co. of Alabama, 15 So.3d at 507. Thus, we read the complaint as asserting claims against the individual defendants in both their official and individual capacities.
“In the defendants’ answer, they stated: ‘The defendants named in their official capacity plead the affirmative defense of sovereign immunity.’ Sovereign immunity, arising pursuant to the Alabama Constitution of 1901, § 14, provides no protection to the defendants because ‘[sjection 14 immunity has no applicability to federal-law claims.’ Bedsole v. Clark, 33 So.3d 9, 13 (Ala.Civ.App.2009) (rejecting defendants’ argument that they were entitled to a summary judgment on plaintiffs 42 U.S.C. § 1983 claim on the basis of sovereign immunity). See also Ex parte Russell, 31 So.3d 694, 696 (Ala. Civ.App.2009) (actions seeking a declaratory judgment or actions seeking to enjoin state officials from enforcing an unconstitutional law are not subject to sovereign immunity). But see Will, supra (recognizing that governmental officials and governmental employees are subject to suit in § 1983 actions for prospective injunctive relief); and Gris-wold, supra (same). Because Watkins’s complaint asserted only federal-law claims, the trial court could not have properly granted the individual defendants, named in their official capacities, a judgment on the pleadings on the ba *848 sis of sovereign immunity. To the extent Watkins sought monetary damages against the individual defendants in their official capacities, however, the trial court’s judgment in favor of the individual defendants is affirmed because claims for such relief are barred under § 1983. See Will, supra; and Griswold, supra.
“The individual defendants also asserted in their answer: ‘The defendants named in their individual capacity plead the affirmative defense of qualified immunity.’ Qualified immunity applies only to governmental officials and governmental employees sued in their individual capacities. See Flood v. State of Alabama Dep’t of Indus. Relations, 948 F.Supp. 1585, 1547 (M.D.Ala.1996) (discussing application of qualified immunity). In Ex parte Madison County Board of Education, 1 So.3d 980 (Ala. 2008), our supreme court stated:
“ ‘ “ ‘Qualified immunity is designed to allow government officials to avoid the expense and disruption of going to trial, and is not merely a defense to liability.’ Hardy v. Town of Hayne-ville, 50 F.Supp.2d 1176, 1189 (M.D.Ala.1999). ‘An official is entitled to qualified immunity if he is performing discretionary functions and his actions do “ ‘not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” ’ Hardy, 50 F.Supp.2d at 1189 (quoting Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir.1997)).” ’
“Ex parte Madison County Bd. of Educ., 1 So.3d at 990 (quoting Ex parte Alabama Dep’t of Youth Servs., 880 So.2d 393, 402 (Ala.2003)).
“In Hardy v. Town of Hayneville, 50 F.Supp.2d 1176 (M.D.Ala.1999), an inmate brought claims, pursuant to 42 U.S.C. § 1983, against an arresting police officer, the chief of police, the may- or, and the Town of Hayneville. Upon consideration of the defendants’ motion to dismiss the inmate’s claims, the United States District Court for the Middle District of Alabama discussed at length the law applicable to the affirmative defense of qualified immunity. The court stated:
“ ‘[The] Defendants ... have asserted the defense of qualified immunity in a Rule 12(b)(6) motion to dismiss, and they are entitled to qualified immunity at this stage in the proceedings if the Plaintiffs[’] complaint fails to allege a violation of a clearly established constitutional right. Santa-morena v. Georgia Military College, 147 F.3d 1337, 1340 (11th Cir.1998). To overcome this immunity, a plaintiff has the burden of “pointing to case law which predates the official’s alleged improper conduct, involves materially similar facts, and truly compels the conclusion that the plaintiff had a right under federal law.” Id. When considering whether the law applicable to certain facts is clearly established, the facts of the case need not be the same, but must be materially similar. Id. at 1339. Only in exceptional cases are the words of a federal statute or constitutional provision specific enough, or the general constitutional rule already identified in decisional law so clearly applicable, so that specific case law is not required. See id. at 1339 n. 6. “If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.” Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1150 (11th Cir.1994) (internal quotations and citations omitted).’
*849 “50 F.Supp.2d at 1189-90. Because in response to the individual defendants’ motions to dismiss the inmate in Hardy failed to provide the necessary caselaw, the district court granted the motions to dismiss as to the defendants sued in their individual capacities. Id. at 1190.
“Upon consideration of the claims asserted in Watkins’s complaint and the defenses asserted in the defendants’ answer, the trial court entered a judgment in favor of the defendants. Because the trial court considered only those two pleadings, the trial court could not have possibly considered any response filed by Watkins to the defendants’ claim of qualified immunity. Thus, the trial court has not afforded Watkins the opportunity to rebut the defendants’ claim that they were entitled to qualified immunity. To the extent the trial court entered a judgment in favor of the individual defendants on the basis of that affirmative defense, that judgment was prematurely entered.”
Watkins v. Mitchem, 50 So.3d 485, 489-91 (Ala.Civ.App.2010).
In his complaint, Turner stated that he was suing Moore, Smith, and Graham in their individual capacities. As explained in Watkins, supra, the immunity applicable to governmental officials and governmental employees sued in their individual capacities is qualified immunity.
“ ‘ “Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates ‘clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir.2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting Harbw v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982))), cert. denied, 541 U.S. 935, 124 S.Ct. 1655, 158 L.Ed.2d 355 (2004); see also Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002) (ruling that qualified immunity “protect[s] from suit ‘all but the plainly incompetent or one who is knowingly violating the federal law1 ” (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir.2001))). When a government official seeks summary judgment based on qualified immunity, courts apply a two-step test to determine whether qualified immunity is appropriate. First, “[a] court required to rule upon the qualified immunity issue must consider ... this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer’s conduct violated a constitutional right?” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). When a court answers this question affirmatively, the court moves to the second step, which is to consider whether the constitutional right was “clearly established” on the date of the violation. Id.’
“Andujar v. Rodriguez, 486 F.3d 1199, 1202-03 (11th Cir.2007).”
Bedsole v. Clark, 33 So.3d 9, 13 (Aa.Civ. App.2009). As previously discussed, if Turner proves that he was exempt from having to make the co-pays, then he has a constitutionally protected property interest to the money withdrawn from his PMOD account. The DOC regulation that was in effect at the time the defendants allegedly withheld the money at issue, a copy of which the defendants submitted to the trial court in support of their motion for a summary judgment, states that inmates will not be charged a medical co-pay for *850 visits to chronic-care clinics. Therefore, if Turner is able to demonstrate that he was a chronic-care patient at the time the money was withheld from his PMOD account, then a genuine issue of material fact exists as to whether a reasonable person should have known that withholding the money was a violation of Turner’s constitutionally protected rights.
The defendants contend that the summary judgment was proper because, they say, they are not the parties responsible for initiating the withholding of money from PMOD accounts. Their affidavits indicate that, at the time of the conduct complained of, Moore was a captain at the Elmore Correctional Facility (“the prison”) and was responsible for overseeing the security of the prison; Smith was an account clerk at the prison and was responsible for PMOD accounts at the prison, including placing holds on money or deducting medical co-pays from those accounts; and Graham was the supervisor of the prison’s business office who occasionally performed Smith’s duties. Whether they were in fact the parties responsible for the wrongful conduct Turner alleged in his complaint is a question of fact. Based on the record before us, we cannot determine whether the defendants were, in fact, responsible for the conduct at issue.
The defendants also contend that “Turner failed to establish that he had challenged his medical co-pay fees in accordance with the process set forth in Regulation 601.” We read that contention as an argument by the defendants that summary judgment was proper because Turner failed to exhaust his administrative remedies.
“‘To be sure, Alabama recognizes the doctrine of exhaustion of administrative remedies. City of Huntsville v. Smartt, 409 So.2d 1353, 1357 (Ala. 1982). “This doctrine ‘requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted.’ ” Id. (quoting Fraternal Order of Police, Strawberry Lodge No. W v. Entrekin, 294 Ala. 201, 209, 314 So.2d 663, 670 (1975)).’
“Patterson v. Gladwin Corp., 835 So.2d 137, 141-42 (Ala.2002). There are recognized exceptions to that doctrine, including
“ “when (1) the question raised is one of interpretation of a statute, (2) the action raises only questions of law and not matters requiring administrative discretion or an administrative finding of fact, (3) the exhaustion of administrative remedies would be futile and/or the available remedy is inadequate, or (4) where there is the threat of irreparable injury.’
“Ex parte Lake Forest Prop. Owners’ Ass’n, 603 So.2d 1045, 1046-47 (Ala. 1992).”
City of Graysville v. Glenn, 46 So.3d 925, 929 (Ala.2010).
In Fraternal Order of Police, Strawberry Lodge No. 40 v. Entrekin, 294 Ala. 201, 209, 314 So.2d 663, 670 (1975), our supreme court approved the “exhaustion of administrative remedies” doctrine found in United States v. Western Pacific R.R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), which applies “ “where a claim is cognizable in the first instance by an administrative agency alone.’ ” Entrekin, 294 Ala. at 210, 314 So.2d at 673 (quoting Western Pacific R.R., 352 U.S. at 63). Under that doctrine “ ‘judicial interference is withheld until the administrative process has run its course.’ ” Id.
“ ‘In Hall v. City of Dothan, 539 So.2d 286 (Ala.Civ.App.1988), the Court of Civil Appeals discussed the purpose of *851 the requirement that public employees exhaust administrative remedies before obtaining judicial review:
“ ‘ “The exhaustion doctrine allows an agency to fully develop technical issues and factual records within its particular area of expertise prior to judicial review. The agency can thereby have the first opportunity to correct any errors it may have made, and further judicial action may become unnecessary.”
“ ‘539 So.2d at 289.’
“Talton Telecomm. Corp. v. Coleman, 665 So.2d 914, 919 (Ala.1995).”
Ex parte Alabama Dep’t of Postsecondary Educ., 50 So.3d 439, 444 (Ala.Civ.App. 2009).
In this case, Administrative Regulation No. 601, § VII., provides:
“A. Inmates who complain that they have been charged a co-payment that is not authorized by this regulation shall send an Inmate Request Slip to the Warden or his/her designee asking that the charge be reviewed.
“B. The Warden or his/her designee will review the complaint to ensure that the complaining inmate initiated the health care visit for which a co-pay was charged. The Warden or his/her designee will determine whether an inmate is entitled to a waiver of the co-payment under the criteria set forth in Paragraph IV/C of this regulation.
“C. Under no circumstances will a Warden or his/her designee override a medical determination as to whether an inmate’s complaint is a serious medical need. However, the Warden or his/her designee may request that the administrator of the health care unit reconsider this finding.”
In his affidavit, Graham, the business manager at the prison, acknowledged that Turner had sent a “request slip” to Smith in the business office, but, Graham said, he returned the slip because Turner had included Smith’s first name in the address. Graham said prisoners are not allowed to use employees’ first names, either orally or in writing. Graham said he did not receive a second “request slip” from Turner.
Regulation No. 601 does not provide the inmate challenging the charged co-pay with a hearing or establish a mechanism through which the inmate may submit evidence in support of his complaint; it only states that the inmate shall file a complaint with the warden regarding the co-pay. The regulation also does not provide a mechanism through which the inmate may appeal the warden’s decision regarding the propriety of the co-pay to the DOC or to an administrative-law judge. Furthermore, simply reviewing an inmate’s complaint does nothing to advance the purpose of requiring the exhaustion of administrative remedies, that is, the review of an inmate’s complaint by a warden does nothing to allow the DOC “to fully develop technical issues and factual records within its particular area of expertise prior to judicial review.” Hall v. City of Dothan, 539 So.2d 286, 289 (Ala.Civ.App.1988).
From the record before us, we cannot say that having a warden or “his/ her designee” review an inmate’s complaint regarding whether a medical copay was properly assessed constitutes a determination of a controversy by an administrative body, as contemplated by the doctrine of exhaustion of administrative remedies, so as to preclude judicial review of Turner’s § 1983 complaint.
For the reasons set forth above, the judgment is reversed, and the cause is remanded to the trial court for further *852 proceedings consistent with this opinion. In reaching our decision, we express no opinion on the likelihood that Turner will ultimately prevail in this action; we hold only that the trial court erred in entering the summary judgment in favor of the defendants at this point in the litigation.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. In his complaint, Turner named Moore and Lindsey Smith as defendants, as well as individuals named Self and Graham, whose first names Turner said were unknown to him. An attorney for the Alabama Department of Corrections submitted a notice of appearance on behalf of Moore, Lindsey Self Smith, and Graham.